578 A.2d 1330

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Norman A. BATSON, Appellant.**

Superior Court of Pennsylvania.

Argued May 2, 1990.

Filed Aug. 17, 1990.

514

Caroline Roberto, Pittsburgh, for appellant.

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Allegheny County on April 23, 1989, following Appellant's conviction on the charges of criminal homicide and theft. Appellant, through new counsel, presently contends that (1) the lower court erred in ruling that appellant's statement was admissible for impeachment purposes if appellant testified in his own behalf, where said statement had been suppressed because of a violation of appellant's Sixth Amendment right to counsel; and (2) appellant was denied effective assistance of trial counsel. We affirm.

On Saturday, May 30, 1987, Theodore Levi, the deceased, went to the Brewer's Lounge in the Gloria Hotel in Pitts-

burgh and was accompanied by his friend, Donald Maher. Testimony revealed the Brewer's Lounge was reputed to be a "homosexual" bar. While at the bar, Mr. Levi met appellant, Norman A. Batson, and over the next two hours, the deceased bought appellant drinks.[1] The deceased requested appellant accompany him to a nearby restaurant and then to another "gay" bar where they were refused entry. Later, appellant and the deceased proceeded to the deceased's home and immediately began drinking whiskey. Mr. Maher had left the company of appellant and the deceased earlier in the evening.

Once at his home, the deceased purportedly made an uninvited sexual advance toward appellant after which appellant became furious and proceeded to beat and kick him repeatedly.[2] The deceased lost consciousness and eventually died. Appellant fled in the deceased's car after stealing a set of sterling silver flatware and some jewelry. He abandoned the car in St. Louis, Missouri, and continued by bus to Las Vegas, Nevada.

Appellant turned himself over to police on June 4, 1987, in Las Vegas, waived his *Miranda* rights and made a statement confessing to the beating. T.T. pp. 158–235. Police detectives from Pittsburgh questioned appellant on June 8, 1987, in Las Vegas. He again expressly waived his constitutional rights and made a statement. On June 10, 1987, appellant was arraigned in Pittsburgh. He requested legal assistance, and a public defender was appointed. Two days later, the police initiated contact with appellant to advise him of the additional charge of robbery. At that time, appellant was again given *Miranda* warnings. Appellant waived his right to counsel and was interrogated without his appointed counsel being present.

Appellant was formally charged with Criminal Homicide, Robbery and Theft by Unlawful Taking or Disposition.

1. The deceased was not acquainted with appellant previous to this meeting.

2. Appellant told police that he had earlier discussed a financial arrangement for sex with the victim (T.T. 280).

Following a suppression hearing on December 1, 1987, the Honorable Robert E. Dauer suppressed the statement made by appellant in Pittsburgh on June 12, 1987, because the court found that the police had violated appellant's Sixth Amendment right to counsel. On December 7, 1987, the Commonwealth filed a motion requesting permission, should appellant choose to testify, to use the suppressed statement for impeachment purposes. The Commonwealth's motion was granted. Appellant chose not to testify on his own behalf at trial.

The jury, on December 8, 1988, adjudicated appellant guilty of first degree murder and theft. He was acquitted of robbery. Post verdict motions were filed and argued. Judge Dauer denied relief and sentenced Appellant to life imprisonment. This appeal followed.

Appellant argues that a statement suppressed due to a violation of a defendant's Sixth Amendment right to counsel may not be used by the prosecution for impeachment purposes. Appellant relies on *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975) which prohibited the use of constitutionally infirm statements to impeach the credibility of a criminal defendant who testifies on his own behalf.

However, *Triplett, supra,* is no longer the law of Pennsylvania for two reasons. First, in 1984, Article 1, Sec. 9 of the Pennsylvania Constitution was amended to include the following language: "The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself." Interpreting the amendment, the Superior Court in *Commonwealth v. Baxter*, 367 Pa.Super. 342, 343, 532 A.2d 1177, 1178 (1987), *allocatur denied*, 518 Pa. 615, 541 A.2d 743, held, "The use of a voluntary confession for impeachment is not a violation of either the Pennsylvania Constitution as currently revised or of the fifth amendment of the United States Constitution." Pa. Const. Art. 1, sec. 9.

Appellant attempts to distinguish *Baxter, supra,* on the grounds that *Baxter, supra,* overrules *Triplett, supra,* only

when a defendant's Fifth Amendment rights are violated. Therefore, appellant argues *Triplet, supra,* remains in full force when a violation of a defendant's Sixth Amendment rights occurs. Consequently, he contends *Triplett, supra,* controls instantly.

However, appellant's argument must fail due to the second reason behind the emasculation of *Triplett, supra.* Most recently, the United States Supreme Court, in *Michigan v. Harvey,* —— U.S. ——, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), held that statements obtained in violation of the prophylactic rule [3] may be used to impeach defendant's false or inconsistent statement, even though the same statement is inadmissible as substantive evidence. Since we are unable to uncover any authority to indicate that the right to counsel guaranteed by the Pennsylvania Constitution is more expansive than that provided under the Sixth Amendment of the United States Constitution, we hold *Michigan v. Harvey, supra,* is controlling.

Here, as in *Michigan v. Harvey, supra,* the statement made by appellant was given voluntarily and of free will. Therefore, we find that the lower court properly ruled that the statement, though not permitted in the prosecution's case-in-chief, could be admitted for impeachment purposes.

■ Appellant next raises the contention that he was denied effective assistance of counsel on several grounds: 1) Counsel's failure to request redaction from statements of all comments concerning appellant's prior criminality and failure to preserve for appeal denial of those requests made; 2) Counsel's failure to request limiting instructions regarding use of prior criminality; and 3) Counsel's failure

3. Briefly, the prophylactic rule provides that once a criminal defendant invokes his Sixth Amendment right to counsel, subsequent waiver of that right even if voluntary, knowing and intelligent under traditional standards, is presumed invalid if secured pursuant to police initiated conversation. For a more in-depth explanation of the prophylactic rule, see *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

to preserve for appeal the issue of weight of the evidence.[4]

The standard for reviewing ineffective assistance of counsel claims is well-established, as outlined recently in *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989).

> The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of effectiveness is of arguable merit; .... If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests.... Finally, we require that the defendant establish how counsel's commission or omission prejudiced him."

*Durst*, 559 A.2d at 505.

Specifically, appellant complains that the following excerpts should have been redacted from the statements which he gave to police and which were admitted as substantive evidence of his guilt:

Question: Did you hit him with anything else?

Answer: No, I did not. I'm perfectly capable of taking care of myself. I don't need to use anything when I get in a scuffle or nothing, I don't do that. (T.T., p. 204)

I've kicked people's ass before, but I ain't never done nothin' like this, believe me. Huh uh. Hell yea, I feel terrible about this. (T.T., p. 234)

I've, I have been in a lot of fights. I've kicked a lot of people's ass. I think I kicked people's ass worse than that before and they lived through it. I never, I wasn't trying to kill him. I swear to God I wasn't. (T.T., p. 318)

---

4. Failure to preserve for appeal the issue of weight of evidence need not be discussed. Most recently, our Supreme Court, in *Commonwealth v. Wallace*, 522 Pa. 297, 561 A.2d 719, 728 (1989), in addressing this issue stated "[a] challenge to the weight of the evidence is not appealable." Moreover, if we were to rule upon the weight of the evidence, we would find that verdict is not so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Jensch*, 322 Pa.Super. 304, 469 A.2d 632 (1983) (standard of review for challenges to the weight of the evidence). Consequently, whether we review the issue or find it waived, counsel was not ineffective. *Commonwealth v. Cook*, 383 Pa.Super. 615, 557 A.2d 421 (1989) (counsel may not be held ineffective for failure to preserve a meritless claim).

It was like he was calling my bluff or something and, you know, so I was going along with him, and don't get me wrong, I have sold myself before so it wasn't like I had never been in that situation before. (T.T., p. 280)

Answer: I was going down there and try and sell myself to get some money.

Question: Okay. In other words, you prostituted yourself in the past?

Answer: Yes, sir. (T.T., p. 311–312)

Assuming *arguendo* that the aforementioned statements should have been redacted and that counsel had no reasonable basis for failing to request redaction or, at least, demand a limiting instruction, we nevertheless find that appellant's assertion of error must fail because he was not prejudiced.

Appellant claims he was prejudiced by the admission of the statements in that he was convicted of first degree murder, rather than murder of the third degree. Ordinarily, evidence of prior crimes is inadmissible. However, "[e]vidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character." *Commonwealth v. Lark*, 518 Pa. 290, 296, 543 A.2d 491, 497 (1988).

As was stated in *Commonwealth v. Morris*, 513 Pa. 169, 171, 519 A.2d 374, 377 (1986), "[t]here is no *per se* rule that requires a new trial for a defendant every time there is a reference to prior criminal activity." Instantly, when reviewed in context, the statements complained of actually support appellant's defense that he did not intend to kill the victim and that the fight was prompted by the victim's sexual advances. Moreover, those statements are merely five isolated excerpts from two separate statements totalling over one hundred and twenty-one pages of the trial transcript. See T.T., pp. 169–240, 268–318. Consequently, we find that appellant was not prejudiced by the admission

of the statements, and, counsel can not be held ineffective for failing to request redaction or for failing to request a limiting instruction. Cf., *Commonwealth v. Wallace*, 561 A.2d at 724–725 (1989).

Judgment of sentence affirmed.